UNITED LEGAL FOUNDATION *et al.*, Plaintiffs-Appellees, v. THE DEPARTMENT OF REVENUE *et al.*, Defendants (Oak Park Investments, Inc., Defendant-Appellant).

First District (5th Division)   No. 1—94—0879

Opinion filed March 31, 1995.—Rehearing denied May 26, 1995.

668

COUSINS, P.J., concurring in part and dissenting in part.

Jonathan L. Smith, of Balin, Smith & Associates, Inc., of Chicago, for appellant.

Rufus Cook, of Cook Partners Law Offices, Ltd., of Chicago, for appellees United Legal Foundation and Elijah Muhammad Foundation.

Roland W. Burris, Attorney General, of Chicago (Barbara E. Pitts, Assistant Attorney General, of counsel), for appellee Department of Revenue.

JUSTICE T. O'BRIEN delivered the opinion of the court:

Plaintiffs, the United Legal Foundation and the Elijah Muhammad Foundation (collectively, the Foundations), obtained a preliminary injunction against defendant Oak Park Investments, Inc. (Oak Park). The circuit court enjoined Oak Park from proceeding on its petition for the issuance of a tax deed. Oak Park challenges the propriety of the injunction. We reverse.

## BACKGROUND

The Foundations acquired certain properties in 1989. In January 1991, the Foundations filed applications for tax exemptions for the property for the year 1990. The Cook County Board of Appeals (Board of Appeals) denied the applications, and the Foundations sought a hearing from the Department. The Department conducted a hearing and affirmed the Board of Appeals' denial on January 13, 1993. The Foundations filed a complaint for administrative review of the Department's decision on February 17, 1993. In addition to naming the Department as a defendant, the Foundations also named Thomas C. Hynes, Cook County assessor; Edward Rosewell, Cook County treasurer; and David Orr, Cook County clerk (collectively, County defendants), as defendants. The Foundations alleged that the County defendants illegally had assessed the property during the time the exemption applications were under consideration. They further

claimed the County defendants had treated the property as delinquent by "offering [them] for sale for alleged delinquent taxes." The Foundations also challenged the Department's findings as to the Foundations' status as charitable organizations as well as the Department's findings regarding the use of the property during the time in question.

Eleven months passed without any significant action in the case. On January 25, 1994, the Foundations moved for summary judgment and a preliminary injunction. In the motion, the Foundations claimed several of the parcels subject to administrative review had been sold, with the redemption period to expire on February 14, 1994. They also asserted they were without funds to redeem any of the property. The Foundations maintained they were entitled to injunctive relief because they were without a remedy at law and would suffer irreparable injury in losing the property. The Foundations identified Oak Park as one of the tax buyers.

The circuit court permitted the Foundations to amend their complaint to include as defendants the various tax buyers who had purchased the back taxes of the lots at issue. The Foundations again sought administrative review against the Department and requested injunctive relief against the County defendants and the tax buyers. Ultimately, the Foundations filed a three-count second amended complaint. In count I, the Foundations sought administrative review of the Department's decision regarding the tax-exempt status of the property. Count II sought injunctive relief against the County defendants, and count III sought injunctive relief against Oak Park and various other tax buyers.

In its motion to dismiss, Oak Park maintained that it had purchased the property at the annual tax sale held on February 24, 1993. The sale was conducted pursuant to a circuit court order of judgment and sale. Oak Park argued the Foundations' injunctive action constituted an improper collateral attack on the judgment and sale proceedings. Oak Park claimed it had filed a tax deed petition on July 1, 1993, of which the Foundations had notice. The Foundations did not deny receiving notice.

The circuit court indicated that it would hear and decide the administrative review portion of the second amended complaint at a later date. However, the court stayed the effect of the Department's denial of the Foundations' applications for tax exemption.[1]

As to Oak Park and the County defendants, the circuit court

---

[1]The Department does not appeal or otherwise challenge this portion of the circuit court's order. Accordingly, our review in this appeal is confined

ruled the Foundations had met the requirements for a preliminary injunction, concluding that they would suffer irreparable harm in the loss of the property. The court found the Foundations had a protectable interest in the property, were without an adequate remedy at law, and were likely to succeed on the merits. The court enjoined Oak Park from procuring the forfeiture of plaintiffs' "rights regarding the tax proceedings which are the subject hereof" or procuring "the issuance of a tax deed respecting the subject property." The order further "tolled and stopped the running of the period of plaintiffs' redemption respecting the tax sale *** until resolution of this cause." In other words, the injunction prohibited Oak Park from obtaining its tax deed until the circuit court completed its administrative review of the Department's denial of the Foundations' application for tax exemption. Oak Park appealed.

## ANALYSIS

Both the Department and Oak Park maintain the circuit court improperly granted the preliminary injunction because the court only had jurisdiction to review the propriety of the Department's exemption decision. We disagree.

■ Although section 138 of the Revenue Act of 1939 (35 ILCS 205/138 (West 1992) (now 35 ILCS 200/8—40 (West Supp. 1993)))[2] gives the circuit court the power to review final decisions rendered by the Department, the preliminary injunction which is the subject of this appeal had nothing to do with the administrative review action. The circuit court here allowed the Foundations to amend their administrative review complaint to include separate counts for injunctive relief against defendants other than the Department. The circuit court is vested with the power to grant injunctive relief. (See 735 ILCS 5/11—101 (West 1992).) As such, the circuit court did not go beyond its jurisdiction in granting the injunction.

Oak Park next challenges the issuance of the injunction. It asserts the Foundations used the injunction action to improperly mount a collateral attack upon the separate tax delinquency proceedings

only to the injunction issued against Oak Park. We note the Department has designated itself as an appellee in this appeal although it argues that the circuit court erred in granting the injunction against Oak Park and the County defendants as part of the administrative review proceeding. At oral argument, counsel for the Department conceded that the Department had no interest in the injunction at issue here, but was appearing so as to apprise this court of the Department's administrative procedures.

[2]Public Act 88—455 replaced the Revenue Act of 1939 with the Property Tax Code. See Pub. Act 88—455, eff. January 1, 1994.

which were ongoing during the course of the exemption application procedure. Oak Park contends that the Revenue Act provided the Foundations with the means with which to protect their interests in the property while the application period was pending. The Foundations, it asserts, did not avail themselves of those remedies and cannot now seek equitable relief. The Foundations respond that they acted in accordance with the Revenue Act in applying for the exemptions. They maintain the County defendants were unauthorized to treat the property as delinquent and equitable relief is appropriate given the circumstances in this case.

■ A party seeking an injunction must establish that it (a) possesses a certain and clearly ascertainable right which requires protection, (b) will suffer irreparable injury if the injunctive relief is denied, and (c) lacks an adequate remedy at law. (*Local 1894 v. Holsapple* (1990), 201 Ill. App. 3d 1040, 1045, 559 N.E.2d 577.) Another factor often cited is the balancing of the relative convenience and injuries to the parties. (*Board of Trustees of Community College District No. 508 v. Bakalis* (1978), 64 Ill. App. 3d 967, 382 N.E.2d 26.) The granting of injunctive relief is within the discretion of the circuit court. (*Regional Transportation Authority v. Burlington Northern Inc.* (1981), 100 Ill. App. 3d 779, 784, 426 N.E.2d 1143.) Upon review, this court must determine whether the court correctly exercised its broad discretionary powers. (*Wessel Co. v. Busa* (1975), 28 Ill. App. 3d 686, 690, 329 N.E.2d 414.) An abuse of discretion occurs if the circuit court's decision is found to be against the manifest weight of the evidence. *Jefco Laboratories, Inc. v. Carroo* (1985), 136 Ill. App. 3d 793, 483 N.E.2d 999.

Generally, courts will not grant injunctive relief in tax cases because the legislature has created a statutory scheme in which the remedies are contained. (*Finn v. Tucker* (1980), 81 Ill. App. 3d 1038, 402 N.E.2d 358.) The resolution of the issues raised by the parties requires this court to examine the various procedures of the Revenue Act which were employed in this case in light of the injunctive relief principles cited above.

## THE EXEMPTION APPLICATIONS

At the time the Foundations applied for tax-exempt status, the procedure was governed by section 19.7 of the Revenue Act. (Ill. Rev. Stat. 1989, ch. 120, par. 500.7.) The Foundations applied to the Board of Appeals, which, in February or March 1991, transferred the "Statement of Facts in Exemption Application" for the parcels at issue for the calendar year 1990 to the Department, pursuant to section 119 of the Revenue Act. (See Ill. Rev. Stat. 1989, ch. 120, par. 600.) On June

7, 1991, the Department notified the Foundations that it had denied the applications. (Ill. Rev. Stat. 1989, ch. 120, par. 600.) Pursuant to section 137, the Foundations requested a hearing from the Department concerning the exemption decision. (Ill. Rev. Stat. 1989, ch. 120, par. 618 (allowing "any party *** who feels aggrieved" by the Department's decision to request a hearing within 20 days of the decision).) Section 137 requires that such a hearing be held before any judicial review of an exemption decision may be entertained. (Ill. Rev. Stat. 1989, ch. 120, par. 618.) In this case, the Department confirmed its denial of the Foundations' application after it conducted the hearing. Following that decision in January 1993, the Foundations sought judicial review of the decision in accordance with section 138 of the Revenue Act. (35 ILCS 205/138 (West 1992) (providing the circuit court for the county in which the property is assessed with the power to review all final administrative decisions made by the Department).) Although the legislature has allowed this procedure for determining the applications of those claiming exempt status, taxes are still collected during its pendency. Each of the provisions noted above expressly states that the procedure does not delay the extension of taxes. (Ill. Rev. Stat. 1989, ch. 120, par. 600 ("The extension of taxes *** shall not be delayed by any proceedings under this paragraph ***"); Ill. Rev. Stat. 1989, ch. 120, par. 618 ("The extension of taxes *** shall not be delayed by any proceeding under this Section ***"); 35 ILCS 205/139 (West 1992) ("No action for the judicial review *** shall stay or suspend any assessment or the extension of any taxes ***").) In fact, each section provides that if the property is found to be exempt, any taxes extended "shall be abated or, if already paid, shall be refunded." Ill. Rev. Stat. 1989, ch. 120, pars. 600, 618; see also Ill. Rev. Stat. 1989, ch. 120, par. 620 (if after judicial review, the circuit court finds that taxpayer has paid erroneous taxes, he shall be entitled to a refund).

■ In view of these statutory provisions, the County defendants acted in accordance with the Revenue Act in assessing taxes against the Foundations' properties during the time in which the exemption applications were under consideration. Thus, the Foundations' allegations that these assessments were "illegal" are unfounded. The plain language of the statutes indicates that the taxpayer is to pay the taxes while the exemption application process is ongoing. If the property is found to be exempt, refunds are to be made to the taxpayer.[3] Our reading of the exemption application provisions is consistent with judicial interpretation of the exemption process. Tax-

---

[3]In this regard, we stress that we pass no judgment upon the propriety of

ation has long been recognized as the rule, and an exemption is the exception. (*Rogers Park Post No. 108 v. Brenza* (1956), 8 Ill. 2d 286, 134 N.E.2d 292.) Indeed, courts must entertain a presumption against an intention on the part of the State to exempt property from taxation. (*In re Application of County Collector* (1978), 58 Ill. App. 3d 228, 374 N.E.2d 227.) Although the Foundations point to the properties' alleged exempt status prior to the 1989 acquisition, that alone does not confer exempt status. Accordingly, the properties legally became delinquent upon the Foundations' failure to pay the taxes, and the ensuing delinquency proceedings were legally commenced.

## DELINQUENCY PROCEEDINGS

At any time after property taxes become delinquent, the Revenue Act allows the collector to publish an advertisement which gives notice of his intended application for judgment and sale of the delinquent property. (See 35 ILCS 205/225 (West 1992).) In this case, the collector so acted at some time after September 1992.[4] Section 230 of the Revenue Act further requires the collector, by registered or certified mail, to notify the owner of delinquent property of the intended date of the forthcoming application for judgment for sale. (35 ILCS 205/230 (West 1992).) Relevant here, section 235 specifically allows a taxpayer to appear in the action and contest the application. (35 ILCS 205/235 (West 1992).) The taxpayer may file an "objection" to the action if the tax due has been paid under protest. "However, if a defense is made that the property *** is *exempt* from taxation and *** a proceeding to determine the exempt status *** is pending under Section 119 [Board of Appeals] or *** Section 137 [Illinois Department of Revenue hearing] or Section 138 [administrative review of final decision of Illinois Department of Revenue] ***, *the court shall not enter a judgment relating to such property until the proceedings *** have terminated.*" (Emphasis added.) (35 ILCS 205/235 (West 1992).) At the time the collection action commenced, the Foundations' section 137 proceeding was pending. Although the Department issued its ruling on the matter on January 13, 1993, the Foundations had the statutory right to an administrative review of the decision under section 138, a right which they invoked on February 17, 1993. Thus, had the Foundations appeared in the case, even if only through

---

the Department's decision as to the properties' exempt status as that is a matter to be determined by the circuit court in the administrative review action.

[4]We take judicial notice of *In re Application of Rosewell v. County Treasurer* (Cir. Ct. Cook Co.), No. Misc. 92—49. The circuit court entered a judgment and order of sale in the cause on January 22, 1993.

a post-judgment motion after January 22, 1993, and apprised the court of the pending administrative proceedings, the Foundations would not have had to seek the injunctive relief ultimately sought in this case.

■ However, in granting the injunction in this case, the circuit court ruled section 194 (35 ILCS 205/194 (West 1992)) was dispositive of the case. Specifically, the court ruled that section 194 did not obligate the Foundations to file a defense or objections in the collector's suit and excused the Foundations from making any type of payment under protest.[5] We disagree with the court's statutory interpretation.

Our courts have likened the collector's application to a complaint which must be answered so as to avoid default. (*People ex rel. Reid v. Adkins* (1971), 48 Ill. 2d 402, 405, 270 N.E.2d 841.) If a taxpayer fails to object to the application, the judgment and order of sale acts as a default judgment against the property for the year in question. (*People v. Hagerty* (1982), 104 Ill. App. 3d 240, 432 N.E.2d 908.) As noted above, section 235 provides the procedure a taxpayer must follow in objecting to the collector's application for judgment for delinquent taxes. Section 194 requires those taxpayers who object to the suit for reasons other than a claimed exemption to pay the tax under protest. (35 ILCS 205/194 (West 1992); *People v. Hagerty*, 104 Ill. App. 3d at 244; *In re Application of County Treasurer* (1976), 42 Ill. App. 3d 895, 356 N.E.2d 844.) Section 194, however, is silent as to the obligations of a taxpayer who claims an exemption. Section 235, however, *does* so indicate: If the parcel is claimed to be exempt, written notice of such must be filed with the court and the court "shall not enter a judgment *** until the proceedings being conducted [before the applicable tribunal] have terminated." (35 ILCS 205/235 (West 1992).) In interpreting statutes, this court must ascertain and give effect to the true intent and meaning of the legislature. (*Pliakos v. Illinois Liquor Control Comm'n* (1957), 11 Ill. 2d 456, 143 N.E.2d 47.) If section 194 is read to absolve the exemption-claiming taxpayer from filing a defense or objection in the collector's case, the express language of section 235 would be rendered meaningless.

Moreover, even if the two sections conflict, which we do not find they do, the terms of the more specific statute must prevail. (*Bowes v. City of Chicago* (1954), 3 Ill. 2d 175, 120 N.E.2d 15.) In this context,

---

[5]The circuit court's ruling indicates that it believed section 194 applied to property redemption proceedings as well as to the collector's suit for judgment and order of sale. However, section 194 pertains only to the collector's application suit.

section 235 is the more specific statute because it expressly provides a defense to the application suit based upon a pending exemption status proceeding. Accordingly, we hold that section 235 is applicable to the facts of this case. However, the Foundations did not comply with its provisions, and that noncompliance caused a judgment for delinquent taxes to be entered against the parcels in question.

■ Parenthetically, we note that, at the time the Foundations filed their initial complaint on February 17, 1993, they had one last statutory remedy at hand: section 2—1301 of the Code of Civil Procedure. (See *Clarke*, 58 Ill. App. 3d at 229.) Section 2—1301(e) allows a court to set aside a final order or judgment if a motion is brought within 30 days of the judgment's entry. (See 735 ILCS 5/2—1301(e) (West 1992).) We cannot say the Foundations were ignorant of the application proceeding and impending sale on February 17 because they alleged in their complaint that the County defendants were treating the property as delinquent "by offering it for sale." Thus, the Foundations failed to avail themselves of the remedies afforded to them under the Revenue Act and under the Code of Civil Procedure before seeking injunctive relief. In this respect, we agree with Oak Park's characterization of the Foundations' injunction action as a collateral attack on the prior application proceedings.

### EFFECT OF THE JUDICIAL SALE OF THE TAXES

Pursuant to the January 22, 1993, judgment, the property was sold to Oak Park at the February 1993 sale. Once such taxes are sold, the owner of the property may redeem the property pursuant to section 253 of the Revenue Act. (35 ILCS 205/253 (West 1992).) The Revenue Act provides various time periods in which the redemption may be made. In this case, the redemption period was to expire on February 14, 1994. A person who redeems from a tax sale must pay the amount of taxes, interests, penalties, and costs. (*People v. Anderson* (1942), 380 Ill. 158, 43 N.E.2d 997.) The Revenue Act does not allow for redemption without payment under any circumstances. The purpose of the statutory provisions concerning property sold at tax sales is to encourage buyers at tax sales, to increase the collection of taxes and to free land to reenter the stream of commerce so as to bear its share of the tax burden. *Bouhl v. Gross* (1985), 133 Ill. App. 3d 6, 478 N.E.2d 620.

■ It was at the redemption stage of the delinquency proceedings that the Foundations sought injunctive relief, seeking, *inter alia*, to toll the redemption period. However, injunctive relief from the redemption provisions has been condemned. Although our courts look favorably upon redemption from tax sales and give liberal

construction to the redemption laws, they have recognized that redemption is a statutory privilege and must be exercised in substantial compliance with the statute. (*In re Application of the County Collector for Judgment Order of Sale Against Lands & Lots Forfeited for Nonpayment of General Taxes & Special Assessments for the Year 1985 & Prior Years* (1991), 220 Ill. App. 3d 933, 936, 581 N.E.2d 367. See also *Dupuy v. Morse* (1949), 337 Ill. App. 1, 6, 85 N.E.2d 187 ("the statutes relating to redemption are specific").) Thus, courts act inappropriately when they depart from the specific legislative requirements and craft their own equitable relief. (*Dupuy v. Morse*, 337 Ill. App. at 7, quoting *People ex rel. Schreiner v. Courtney* (1942), 380 Ill. 171, 181 (" 'It is the business of the Courts to construe the law in cases presented to them; it is the business of the Legislature to enact laws necessary to the welfare of the State.' [The court] cannot arrogate to the court, legislative powers which are vested in the legislative branch alone").) We note that in those cases where our courts have relaxed redemption provisions, the taxpayer has paid the redemption amount. (See, *e.g., In re Application of the County Treasurer* (1980), 84 Ill. App. 3d 506, 510, 405 N.E.2d 869 (valid redemption found when taxpayer sent his check to the incorrect county official); *In re Application of Williamson County Collector* (1984), 128 Ill. App. 3d 408, 409-10, 470 N.E.2d 1193 (valid redemption found when taxpayer redeemed by a personal check which had later been dishonored and reissued after the expiration of the redemption period).) Moreover, a taxpayer may find relief from redemption requirements if a mistake was caused by a clerk's error. (See *In re Application of the County Treasurer & Ex Officio County Collector of Cook County, Illinois, for Judgment & Order of Sale Against Real Estate Rendered Delinquent for the Nonpayment of 1980 Taxes* (1989), 185 Ill. App. 3d 789, 542 N.E.2d 397 (redemption allowed where taxpayer's mistakes were caused by county clerk's ministerial error).) In no case, however, has a taxpayer been excused from redemption merely because he lacks the funds necessary to effect the redemption. (See *Ware v. D.R.G., Inc.* (1974), 17 Ill. App. 3d 758, 307 N.E.2d 740 (temporary injunction dissolved where elderly taxpayer of limited financial means failed to pay redemption amount).) The legal remedy provided by the legislature for relief from a tax sale is the redemption procedure itself. Although harsh in its application, the logic in such a statutory scheme is clear: the uninterrupted collection of local revenue. Accordingly, the circuit court incorrectly granted equitable relief in tolling the redemption period.

Furthermore, injunctive relief is unavailable when an adequate

remedy at law exists. (*La Salle National Bank v. County of Cook* (1974), 57 Ill. 2d 318, 312 N.E.2d 252.) We note the Foundations have an adequate statutory remedy to challenge any tax deed ultimately issued to Oak Park. Section 266 of the Revenue Act allows appeal of the order issuing the deed in addition to relief from the order pursuant to section 2—1401 of the Code of Civil Procedure (735 ILCS 5/2—1401 (West 1992)). (See 35 ILCS 205/266 (West 1992).) The statute specifically cites the property's exemption from taxation as a ground for section 2—1401 relief. (See 35 ILCS 205/266 (West 1992).) This section would play an important part in the future of these properties in the event the administrative review proves successful to the Foundations.[6]

The circuit court also indicated that it granted injunctive relief in this case because, after balancing the interests of both Oak Park and the Foundations, it believed less harm would accrue to Oak Park than the Foundations. The court also cited the public interest expressed "by the [G]eneral [A]ssembly, in permitting tax exemption for properties being used for charitable purposes." Statutes imposing taxes and providing means for their collection should be strictly construed insofar as they may operate to deprive taxpayers of their property by summary proceedings, or to impose penalties or forfeitures upon them. (*People ex rel. Conner v. Burgess-Norton Manufacturing Co.* (1971), 49 Ill. 2d 397, 400, 275 N.E.2d 403.) Tax laws, however, must be given a reasonable construction, without bias or prejudice against either the taxpayer or the State, in order to carry out the intention of the legislature and "the long range objective of all tax measures—the accomplishment of good for the social order." (*People ex rel. Conner v. Burgess-Norton Manufacturing Co.*, 49 Ill. 2d at 400.) In this case, the properties were found to be nonexempt by the Department. Although the Foundations may ultimately prevail in their claims for exemption, the public interest, as established in the tax statutes, is to collect the taxes while the exemption decision is adjudicated. Nevertheless, the Foundations argue and the dissent agrees that injunctive relief is available to those taxpayers in situations where the complained-of tax is unauthorized by law or is on

---

[6]The dissent disapproves of our citation of section 2—1401 because Oak Park has neither briefed nor argued the issue. However, the Foundations argue in their brief that "should the trial court resolve the tax exemption issue in the Foundations' favor, Oak Park will, under the Revenue Code, be entitled to full repayment of the funds paid by it." Although the Foundations provided this court with no citation for that proposition, it is found in section 266 of the Revenue Act (35 ILCS 205/266 (West 1992)), the very section which gives the Foundations the right to seek section 2—1401 relief.

exempt property. (*First National Bank & Trust Co. v. Rosewell* (1982), 93 Ill. 2d 388, 392, 444 N.E.2d 126; *American Medical Association v. Rosewell* (1992), 237 Ill. App. 3d 1097, 606 N.E.2d 68.) However, as noted in our discussion of the exemption application process, the taxes extended in this case were done so legally. To that extent, this factor distinguishes this case from those cited to this court by the Foundations. In view of these facts, the injunction should not have been entered.

We are mindful of the harshness of the law's application in this case, particularly with regard to the fact that the Foundations are organizations of an alleged charitable nature. We find our supreme court's language in *Stanley v. Bank of Marion* (1961), 23 Ill. 2d 414, 420, 178 N.E.2d 367, to be instructive:

> "It is, of course, unfortunate that appellees have suffered the loss of their property because of one year's delinquent taxes. It is clear, however, that they were fully informed of the sale and were afforded every opportunity to redeem or defend. Having failed to do so, they are in no position to collaterally attack the original tax proceedings."

The General Assembly has established a property tax statutory scheme so that uniformity exists in the levy and collection of those taxes. We believe that any endorsement by this court of the Foundations' position would result in the contravention of that statutory scheme.

The circuit court's injunction order enjoining Oak Park from proceeding on its tax deed petition is reversed.

Reversed.

McNULTY, J., concurs.

PRESIDING JUSTICE COUSINS, concurring in part and dissenting in part:

I concur with the part of the majority opinion which holds that the trial court was empowered to do equity in the case *sub judice*; however, I dissent from the part of majority opinion which, even so, reverses the trial court's grant of injunctive relief in this case.

The granting of injunctive relief is within the discretion of the court. (*Regional Transportation Authority v. Burlington Northern Inc.* (1981), 100 Ill. App. 3d 779, 784, 426 N.E.2d 1143.) For the reasons which follow, we should hold that the trial court did not abuse its discretion in the instant case.

In reversing the trial court because of disagreement with the

trial court's interpretation of sections 194 and 235 of the Revenue Act, the majority expresses the view that the noncompliance by the Foundations with section 235 caused a judgment for delinquent taxes to be entered against the parcels in question and that, after the property was sold, the taxpayer's remedy was limited to a legal remedy of redemption. The majority further expresses the view that, although the circuit court was empowered to do equity, the court was, nevertheless, powerless in this case because of specific provisions in section 235 of the Revenue Act. I disagree.

The provisions of section 235 do not require reversal of the trial court's order in this case. Also, although the appellant, Oak Park, neither briefed nor argued a section 2—1401 issue, the majority expresses the view that the circuit court improperly granted injunctive relief tolling the statute because, pursuant to section 2—1401 of the Code of Civil Procedure, if the administrative review proves successful, the Foundations have an adequate statutory remedy to challenge any tax deed ultimately issued to Oak Park. Relative to the availability of relief which might be sought in a post-trial proceeding, it is my view that we should not decide issues on appeal which have been neither briefed nor argued. Also, even were the matter properly before us, the majority's view that proceedings pursuant to section 2—1401 provide an adequate remedy in the case *sub judice* is mistaken in my opinion.

Then, too, even assuming *arguendo* that the Foundations have an adequate remedy at law, we should affirm the trial court's injunction because the Illinois Supreme Court has repeatedly decided that the only exceptions to the bar against equitable or declaratory relief where an adequate legal remedy exists are complaints that the tax is unauthorized by law or is exempt property. (See *First National Bank & Trust Co. v. Rosewell* (1982), 93 Ill. 2d 388, 392, 444 N.E.2d 126.) In the *First National Bank* case, the Illinois Supreme Court wrote:

"This court has consistently held that *independent grounds for equitable jurisdiction in cases involving real estate taxes exist* only when an unauthorized tax is levied or *when exempt property is taxed \*\*\**. [Citations.] *In all other situations, equity will assume jurisdiction only when no adequate legal remedy is available.*" (Emphasis added.) (*First National Bank*, 93 Ill. 2d at 392.)

Thus, even the availability of an adequate remedy at law is no basis for denying equitable relief when exempt property is taxed.

Finally, the learned trial court judge issued a comprehensive and proper order, some of the pertinent provisions of which state:

"The court, balancing the interests of the parties, further finds that entry of an injunction will cause substantially less harm to

the Count II and III Defendants than the withholding of injunctive relief will cause to the Plaintiff[s], and that there is a public interest, expressed by the [G]eneral [A]ssembly, in permitting tax exemption for properties being used for charitable purposes. The court further finds that, in the circumstances of this case, no bond is necessary.

Plaintiffs' motion for a preliminary injunction against the Count II and Count III Defendants is therefore hereby granted. It is hereby ordered that Defendants *** be, and they are hereby enjoined and restrained from taking any action whatever (1) to cause or procure the forfeiture of Plaintiffs['] rights regarding the tax proceedings which are the subject hereof, or (2) to cause or procure the issuance of a tax deed respecting the subject property or any part thereof, pending and until resolution of this cause. This order tolls and stops the running of Plaintiffs' period of redemption respecting tax sales of the subject property, pending and until resolution of this cause."

It is the opinion of the majority in the instant case that the trial court lacked authority to issue this stay order. I disagree. I disagree because the circuit court has the discretionary power to stay the decision of an administrative agency pending final review of that agency pursuant to the provisions of the Administrative Review Law. The Administrative Review Law provides:

"§ 3—111. Powers of circuit court. (a) The Circuit Court has power:

(1) with or without requiring bond (except if otherwise provided in the particular statute under authority of which the administrative decision was entered), and before or after answer filed, upon notice to the agency and good cause shown, to stay the decision of the administrative agency in whole or in part pending the final disposition of the case." 735 ILCS 5/3—111 (West 1992).

Also, see *Group Securities, Inc. v. Carpentier* (1958), 19 Ill. App. 3d 513, 530-31, 154 N.E.2d 837. Accordingly, I dissent.